IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

William M. Baker, Jr.,                    Case No. 3:08 CV 36

               Plaintiff,        MEMORANDUM OPINION
                                AND ORDER
      -vs-
                                JUDGE JACK ZOUHARY
Gerdenich Realty Co.

               Defendant.

This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. No. 38). Plaintiff has opposed the Motion (Doc. No. 43), and Defendant has replied (Doc. No. 47). Plaintiff counters with a Motion for Sanctions (Doc. No. 46). Defendant has opposed this Motion (Doc. No. 48), and Plaintiff has replied (Doc. No. 52).

## BACKGROUND

Defendant Gerdenich Realty managed tax credit housing projects beginning in the late 1990s and continuing through February 2007. In early 2006, Defendant received two letters of interest from Plaintiff *pro se* William Baker regarding Defendant's open Assistant Property Manager position. Plaintiff interviewed for the position with Defendant's owner, Joseph Gerdenich; its president, Jim Ostrowski; and property manager Pamela Turchan, who would be Plaintiff's direct supervisor in the Assistant Property Manager position. Plaintiff was hired on March 20, 2006 for an initial 90-day probationary period, at which point his performance would be evaluated to determine whether his employment would continue.

Plaintiff's job requirements included acting as an intermediary between builders and tenants on maintenance issues which could potentially be resolved via builders' warranties. Plaintiff also oversaw billing and collection of rent. Plaintiff alleges he advocated on behalf of tenants (many of whom were minorities), encouraging Defendant not to evict them for nonpayment of what Plaintiff believed were unjustly charged late fees resulting from Defendant's unfair billing practices.[1] Plaintiff had some success in eliminating or reducing these charges, but felt as though Defendant was becoming "dismay[ed]" at Plaintiff's "endless" discussions of these account issues (Doc. No. 1, p. 4).

In May 2006, Turchan was copied on a written complaint sent to Plaintiff by Micah Lestock, project manager for one of Defendant's housing builders, in which Lestock requested Plaintiff follow proper procedure regarding warranty issues -- specifically, not to instruct tenants to contact the builder directly, but to first investigate the complaint himself. Plaintiff responded he did "not have the expertise, nor the inclination to go out to every tenant to personally check to see, on site, whether there is a sink hole in the yard, as reported has never been filled, or whether the furnace is blowing cold or cool air. . . . I cannot be expected to do my job as well as yours" (Ostrowski Aff., Ex. D).

Turchan received a second written complaint about Plaintiff from E. Mickens, executive director of Toledo Community Development Corporation. Mickens was concerned about the repercussions of Plaintiff's response to Lestock with respect to Defendant's future relationship with Lestock's building company, as it **was** Plaintiff's responsibility to thoroughly investigate tenant

---

[1]

In his Opposition, Plaintiff indicates some tenants were being charged $50 each month without notice for late rent, "even though their rents were paid in full before the 5th of the month, because their rent payment was being split between rent and maintenance charges that most tenant[s] were not aware of because they had not been sent notice of any maintenance charges incurred" (Doc. No. 43, p. 2). In other words, these rent payments were first put toward outstanding maintenance bills, and then the remainder would go toward rent. Since the tenants had not paid sufficient funds to cover both charges, the rent was considered "late." However, Plaintiff offers no evidence to corroborate these allegations.

2

complaints prior to contacting a builder or general contractor. Mickens requested Plaintiff receive additional training regarding "how to deal with general contractors and warranty issues. Tenants are to work directly with the property manager and not contact the contractor directly" (Ostrowski Aff., Ex. F).

Turchan sat down with Plaintiff on May 25, 2006 to discuss these complaints and remind him of the proper chain of command in dealing with maintenance issues. Plaintiff was admonished not to send correspondence to outside contractors without first obtaining Turchan's approval. Plaintiff was also reminded of his job description and told to be more careful to properly allocate his time to assigned projects and to complete tasks in a timely fashion. Shortly thereafter, in June 2006, Turchan again met with Plaintiff to discuss his 90-day performance evaluation. Plaintiff received an overall rating of 64, falling in the range of "improvement needed" (Ostrowski Aff., Ex. I). Specific criticisms included:

**Quality** - Need improvement here;

**Productivity** - Still not completing work in a timely manner;

**Job Knowledge** - Concentrate on learning all aspects of this job and complete in a timely fashion;

**Reliability** - Forget appointments/double book leaving others to have to cover for you;

**Independence** - Need to have work/letters etc. reviewed prior to sending. Have had complaints by owners;

**Initiative** - Still waiting for you to reach the point of handling all aspects of job;

**Adherence to Policy** - We have certain steps and processes that must be followed - no shortcuts;

**Judgment** - . . . Still work needed on financials (*id.*).

3

Plaintiff, however, gave himself the highest score possible (100) in every category on his self-evaluation, indicating he had "followed all rules and regulations to the tee [sic]" and his "quality of work goes to the maximum extent possible and practical" (Ostrowski Aff., Ex. H). When asked for his comments on his supervisor's evaluation of his performance, Plaintiff wrote, "I believe this evaluation is somewhat low, but agree I could not be perfect because only Jesus was" (Ostrowski Aff., Ex. I).

Defendant extended Plaintiff's probationary period an additional 30 days to give him an opportunity to improve his performance based on the criticisms detailed in his 90-day evaluation. Nevertheless, during those 30 days, Defendant received five more complaints about Plaintiff from tenants and co-workers. The first of these came from tenant Tosha Sanders on June 18, 2006, who complained Plaintiff stopped over at her residence without her permission and made "an inappropriate comment asking [her] if [her] sister looked as good" as she did (Ostrowski Aff., Ex. J). Another complaint came from co-worker Cory Faulkner on June 20, 2006 after Plaintiff engaged Faulkner in a verbal altercation. Faulkner wrote, "[Plaintiff] is completely unprofessional" (Ostrowski Aff., Ex. K).

Yet another complaint came from tenant Duvall Edwards at the end of June 2006. Edwards stated Plaintiff was "very rude" when he arrived at her apartment unannounced and made her "very uncomfortable" (Ostrowski Aff., Ex. L). She requested he refrain from being around either her or her children. Along similar lines, tenant Dishka Baker complained Plaintiff was "asking personal questions like 'Do you have a man? Where is he? You shouldn't have a problem paying bills, he should do that for you'" (Ostrowski Aff., Ex. M). She accused Plaintiff of making her "feel scared and unsafe in [her] own home" (*id.*). Finally, a tenant complained in early July 2006 "because he

4

[Plaintiff] is a bully, raises his voice and does not follow through. Also he lies" (Ostrowski Aff., Ex. N).

At the end of his additional 30 days of probation, the same three individuals who decided to hire Plaintiff (Gerdenich, Ostrowski, and Turchan) concurred in the decision to fire him. Defendant alleges this decision was motivated by Plaintiff's overall job performance, the complaint by co-worker Faulkner, and the six additional complaints Defendant received regarding Plaintiff's behavior on the job. Plaintiff counters that his termination was motivated by race discrimination under Title VII (42 U.S.C. § 2000e *et seq.*) and retaliation under 42 U.S.C. § 1981 for his advocacy on behalf of minority tenants.

### STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." When considering a motion for summary judgment, the court must draw all inferences from the record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

As a *pro se* litigant, this Court has consistently granted Plaintiff every leniency in his filings during the course of this case, and will continue to do so in evaluating his arguments in opposition to Defendant's Motion for Summary Judgment. *El Bey v. Roop*, 530 F.3d 407, 413 (6th Cir. 2008) (*pro se* plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings).

## TITLE VII RACE DISCRIMINATION CLAIM

Plaintiff may establish a prima facie case of race discrimination by presenting either direct or circumstantial evidence of the discrimination. *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1081 (6th Cir. 1994). As Plaintiff has not presented any direct evidence of racial discrimination, he must show: (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the particular position; and (4) a person outside the protected class replaced Plaintiff. *Manzer*, 29 F.3d at 1081.

Plaintiff is a black male, and thus a member of a protected racial class; he was terminated from his position and replaced by a white male. The dispute therefore centers on whether Plaintiff was qualified. Plaintiff has not shown he was qualified for his position with Defendant. To show he is qualified for a position, a plaintiff must put forth sufficient evidence for a reasonable jury to find he has "met the legitimate expectations of his employer." *Cline v. Catholic Diocese*, 206 F.3d 651, 660 (6th Cir. 1999).

Here, Plaintiff was initially hired for a 90-day probationary period, which was extended to a 120-day probationary period to give him additional time to conform his behavior to the position's requirements (Ostrowski Aff. ¶¶ 18-19, 21). Turchen, Plaintiff's supervisor, met with him on May 25, 2006, during his initial 90-day probationary period, to discuss Lestock and Mickens' complaints against Plaintiff as well as Defendant's concerns regarding Plaintiff's timely completion of assigned tasks and proper management of his time (Ostrowski Aff., Ex. G). His June evaluation, at the conclusion of his first 90 days, showed "improvement needed" (Ostrowski Aff. ¶¶ 23-27). At that time, his self-evaluation reflected a perfect score, despite the concerns Defendant raised with Plaintiff at the May 25 meeting (Ostrowski Aff., Ex. H). By the conclusion of his 120 days of probation,

6

Plaintiff had accrued a total of seven complaints against him, including allegations of sexually inappropriate behavior, a lack of professionalism, and incompetence in his position (Ostrowksi Aff., Exs. J, K, L, M, N). These seven complaints, six of which came from outside Defendant's company, and Plaintiff's overall poor job performance, led Defendant to terminate Plaintiff following his probationary period (Ostrowski Aff. ¶¶ 28-29). Plaintiff does not contradict these facts with any evidence he had met Defendant's legitimate expectations for his position. Therefore, Plaintiff fails to present a prima facie case of race discrimination under Title VII.

However, even assuming *arguendo* Plaintiff was qualified for the position of Assistant Property Manager and thus able to present a prima facie case of race discrimination, Defendant has presented legitimate, non-discriminatory reasons for Plaintiff's discharge. *Manzer*, 29 F.3d at 1082. His 90-day evaluation showed eight areas out of eleven in which Plaintiff needed improvement, and Defendant received additional complaints about Plaintiff's job performance during his 30 days of extended probation. Thus, Plaintiff would need to show Defendant's reason for terminating him is a pretext for a discriminatory rationale, either by showing by a preponderance of the evidence "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the discharge, or (3) that they were insufficient to motivate the discharge." *Id.* Plaintiff fails on any of these grounds.

Plaintiff fails to present the first type of pretext because Defendant has produced copies of all seven written complaints against Plaintiff, thereby indicating some factual basis for Plaintiff's termination. Along the same lines, Plaintiff fails to present the third type of pretext because Plaintiff was a probationary employee throughout his tenure with Defendant. Seven complaints about behavior and job performance, coupled with a 90-day evaluation showing "improvement needed" in

an employee's conduct, is sufficient to indicate to an employer that the employee is simply not the proper person for the job. Finally, Plaintiff fails to show the second type of pretext because he has not shown an "illegal motivation was **more** likely than that offered by the defendant." *Id.* (emphasis in original).

Furthermore, a defendant may rebut an inference of discrimination by establishing that the same actors hired and fired an individual. *Buhrmaster v. Overnite Transp. Co.*, 61 F.3d 461, 464 (6th Cir. 1995) ("An individual who is willing to hire and promote a person of a certain class is unlikely to fire them simply because they are a member of that class."). As the same group of individuals acted both to hire and fire Plaintiff, it is highly unlikely Gerdenich, Ostrowski and Turchen would overcome their alleged race discrimination to hire Plaintiff only to fire him a mere 120 days later. Plaintiff has not presented evidence sufficient to demonstrate Defendant's proffered legitimate, non-discriminatory reasons for his discharge were pretext for race discrimination. Defendant is granted summary judgment on the race discrimination claim.

## SECTION 1981 RETALIATION CLAIM

Employer retaliation claims brought under Section 1981 are evaluated under the same burden-shifting analysis as Title VII retaliation claims. *Newton v. Meijer Stores, L.P.*, 347 F. Supp. 2d 516, 522 (N.D. Ohio 2004) (*citing Wade v. Knoxville Utils. Bd.*, 219 F.3d 452, 464 (6th Cir. 2001)).[2] In other words, a plaintiff presents a prima facie case of retaliation by demonstrating (1) the plaintiff engaged in protected activity; (2) the exercise of the plaintiff's civil rights was known to the

---

2

The Supreme Court has not stated outright that the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) burden-shifting framework applies to Section 1981 retaliation claims. However, the Sixth Circuit has applied the *McDonnell Douglas* analysis to Section 1981 retaliation claims previously. *See Wade*, 259 F.3d at 464. This Court will do likewise.

defendant; (3) the defendant thereafter undertook an employment action adverse to the plaintiff; and (4) a causal connection existed between the protected activity and the adverse employment action. *Id.* (*citing Virts v. Consol. Freightways Corp.*, 285 F.3d 508, 521 (6th Cir. 2002)).

The Supreme Court recently recognized that defending the contractual rights of others is "protected activity" actionable under a Section 1981 retaliation claim. *CBOCS West, Inc. v. Humphries*, ___ U.S. ___, 128 S. Ct. 1951, 1954 (2008). Thus, Plaintiff's advocacy against Defendant's unfair billing practices on behalf of minority tenants qualifies as protected activity under the prima facie retaliation framework. Plaintiff discussed his concerns repeatedly with Defendant (*see, e.g.*, Ostrowski Aff., Ex. G), and Plaintiff was later terminated.

It is arguable whether Plaintiff has alleged sufficient causal connection between his advocacy and his termination to present a prima facie case of retaliation. Nevertheless, assuming *arguendo* that he has satisfied his prima facie retaliation claim, Plaintiff faces the same problems with the burden-shifting analysis here as he did regarding his race discrimination claim above. Plaintiff has not presented evidence that Defendant's legitimate, non-discriminatory reasons for firing him (poor job performance and improper behavior) were mere pretext. Thus, Defendant is also granted summary judgment on the retaliation claim.

## SANCTIONS

As the basis for this Motion, Plaintiff argues Defendant is refusing to cooperate with Plaintiff's "lawful valid discovery request[s]," including the entire employment record of Walter Gorman, whom Plaintiff was hired to replace (Doc. No. 46, p. 19). However, Plaintiff's Motion fails because it is untimely according to Local Rule 37.1(b) ("No discovery dispute shall be brought to the attention of the Court, and no motion to compel may be filed, more than ten (10) days after the

discovery cut-off date."). In the instant matter, the parties had until November 3, 2008 to complete discovery. Plaintiff's Motion was filed December 15, 2008, well past the ten-day deadline.

Furthermore, the documents Plaintiff requests ("comparative data, lease agreements for properties in and those properties lying outside the inner city that defendant's other than the plaintiff property managers manage [sic]," and "the entire employment record of Mr. Walter Gorman") have either been supplied to Plaintiff or are not relevant to the issues in this case (Doc. No. 46, p. 19). The focus of the Complaint is retaliatory or discriminatory treatment at the hands of Defendant's supervisors. Comparative data regarding other properties not managed by Plaintiff, or lease agreements for other properties, are not germane to this case. Moreover, Defendant has supplied Plaintiff with Gorman's entire personnel file and has made good faith efforts to comply with Plaintiff's vague discovery requests. It is unclear what additional information Plaintiff believes Defendant has been withholding regarding his predecessor, but it is certainly not a sufficient basis for sanctions.

## CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment (Doc. No. 38) is granted. Plaintiff's Motion for Sanctions (Doc. No. 46) is denied.

IT IS SO ORDERED.

s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

February 19, 2009